and so we will call our next case the United States v. Rivera. Mr. Campbell. Good morning, your honors. Matt Campbell, federal public defender for the Virgin Islands for Raquel Rivera and I'd like to reserve five minutes for rebuttal. Done. The Farm Bill of 2018 instituted two important changes in law that apply to this case. It amended the definition of marijuana and it created a brand new definition of hemp. Those definitions are mutually exclusive. After the Farm Bill, marijuana is cannabis sativa L with a THC content greater than 0.3%. Hemp is cannabis sativa L with a THC content of less of 0.3% or less. We're on it. We got it. We read your stuff. Why don't you get right to the argument that I think is at the heart of this, which is, is this a carve out an exception? Uh, this THC, uh, content piece, and if it is a carve out an exception, uh, is it therefore an affirmative defense rather than an element of the offense? What's your, what's your response to the assertion that, that this is a carve out and hence an affirmative defense? Your honor, our response to that argument is that since marijuana doesn't include hemp and is a controlled substance, hemp is not a controlled substance. It appears on none of the schedules. So if the government's arguments are accepted, there's no longer a requirement that it prove beyond a reasonable doubt that the substance at issue was a controlled substance. Instead, the government would only be required to prove that the substance at issue might be a 5A1, right? That statutory section says, uh, it's not necessary for the United States to negative any exemption or exception. So you, based on that, you'd have to acknowledge, wouldn't you, that if we thought that this was an exception, it would be an affirmative defense, right? If the court were to find that this is an exception as that term is used in 885A, I agree with, with what the court said. However, doing so causes constitutional problems because the element of the offense here is controlled substance. That's the element. That depends, that depends on how we read the section, right? You, you can't, it sounds Mr. Campbell, like you're asking us to assume your conclusion. You're asserting that that's the section, the statutory section and, and discern what the intent of Congress was from the language and the structure. So let's, let's do that. Let's look at the section and see what it says. The framing of it, uh, after the farm bill, uh, takes that mature stock language. Maybe we should ask you this to begin with, did you think the mature stock, uh, language was an exception or was a, an element? Your Honor, I can see that there are several cases that have, uh, have treated the mature stock as an exception. Um, there are, there's also at least one case out of the Ninth that it is an element. Um, so I think there's a, at this point anyway, there's a circuit split on the issue. Um, but I think there is an important difference between this issue and the mature stock issue. And that is because Congress has chosen to define hemp as not a controlled substance. And again, what I was getting at with that issue is that they choose to define mature stock is not controlled substance. There, there is no definite, there is no separate definition in title seven of stock. No, but there is, we're looking, we're looking at the section that, that everybody's focused on right now is that that section, which was amended by the farm bill. Right. Yes. And that after the amendment, it breaks out the mature stock piece into a separate subsection two, and it adds the new hemp statement in a new subsection one, right? So if your argument is that hemp is not a carve out, but it's an element, is it necessarily your case that mature stock is the same thing? Because they've right. I'm not sure that they have treated them the exact same way because hemp itself is defined in title seven, section 13, 1639. Oh. And what I'm trying to get at is that the element of the offense that misery was charged at required proof beyond a reasonable doubt that the substance at issue was a controlled substance. And the definition of marijuana requires that the THC content exceeds 0.3%. So in essence, what the government proved here was that the substance was either a controlled substance, marijuana, or a non-controlled substance hemp. So if the government's argument is accepted, the government no longer is required to prove beyond a reasonable doubt that something is a controlled substance. And I don't want to seem obtuse, Mr. Campbell, but I'm just trying to look at the structure of the section. It's section, right? This is 802 subsection 16. Yes. When it got amended in 2018, the language used to all be under one subparagraph A, and it said such term does not include the mature stock. They changed it. They broke out two new subsections. Now there's a subparagraph A to 802.16, and it says the term marijuana does not include. And then under that is a subsection two for mature stock. So structurally, it looks like they've treated mature stock and hemp in the same fashion, both of them under a new subsection B that says marijuana does not include. Am I not right about that just looking at it? Visually, I would agree. Okay. So now let's look at the words does not include. Are they not the linguistic equivalent of exclude? Your Honor, not to parse words too much, but I'm not sure I agree with that because when something is excluded, that is assuming that it would be included within the substance to begin with. And I'm not sure that that's the case here because again, we're dealing with a slightly different issue, which is when THC content is the separator between a controlled substance and a marijuana. Congress has chosen to say that they are two completely separate things. It's how they've chosen to say it that matters, right? That's what you and I are going around about. Nobody's disagreeing that Congress has said hemp is not included now as a controlled substance in the same way as marijuana. The question is, did they frame that as an exclusion or not? Did they say, you know what? This is marijuana. This cannabis sativa is marijuana, except for this kind of cannabis sativa. If it's got THC less than this amount, then we're calling it hemp and it's not included. If they say it that way, if they exclude it from the general definition, it's an exclusion by definition, isn't it? I think it might be different if this statute were written in a way that says the term marijuana means all parts of the plant, et cetera, et cetera, unless the THC content is less than 0.3 or something like that. Isn't that in fact what it says? If we took the time to read this whole thing, it says marijuana means all parts of the plant cannabis sativa, whether growing or not, the seeds thereof, the resin extracted, et cetera, it says it's all there. The whole point of the 2018 amendment was to go out of its way to say, and not hemp. Because before you would say it is hemp, but it's in there. They went out of their way in 2018 to say, not anymore, not hemp. Why isn't that just logically, linguistically, structurally, not an exclusion from the formally defining what marijuana was as including hemp and now excluding hemp? Because Congress chose to define hemp as a unique substance in and of itself. That's what they did. They defined it in Title VII. By doing that, they've created a situation where it's not a type of marijuana at all. If this were a Venn diagram, for example, we'd have a certain circle of marijuana. Then we'd have a circle over here for hemp, and there's no intersection between the two. By creating a substance that is a non-controlled substance, they've separated them themselves. For the government to now claim that all it has to do is prove it's either a controlled substance or non-controlled substance doesn't simply comport with the Constitution. If you prove that it is marijuana, whatever the HPC percentage is, haven't you proven marijuana being a controlled substance, marijuana not being hemp? Haven't you proved it's a controlled substance? Isn't this what the government chemist did? He wasn't a chemist. He was a chemist, and he said without hesitation, this is marijuana. Isn't that sufficient? Your Honor, we believe that the answer to that question is no. Essentially, there were three separate tests, and he was asked to explain what those tests generally did. He explained the procedures. He was never asked what the results of those tests were. At one point, he referred to the marijuana plant. We know there's no such thing as a marijuana plant. There's a cannabis sativa plant. There's no such thing as a marijuana plant. He was then asked, what did you conclude it was? Marijuana. We have no idea on what basis he concluded that it was marijuana, and it's not even clear that he was using marijuana as that term is defined post-farm bill. But having said that it was marijuana, if you wanted to tear that down, didn't he need to do it then now? He found it was marijuana. He was specifically asked on cross-examination about THC testing, which he admitted they didn't do. The jury instructions made it very clear that the to that issue. Unlike some of the other cases at the government sites, counsel also moved to exclude his testimony or have it limited, which the court ultimately denied. His testimony is dubious at best, and we believe that it doesn't satisfy the test set issue. I'm at my time. Yeah. Let me ask Judge Mady or Judge Roth whether either of them have anything further at this point for you. No? Okay. Well, then we'll hear you on rebuttal. Mr. Camlin, we'll turn the mic over to Mr. Sleeper for the government's position. Good morning again, Your Honor. Adam Sleeper on behalf of the United States. May it please the almost identically to the firearm exemption that this court held was an affirmative defense in warrants. There's nothing in the language there to distinguish between the two provisions. I know Judge Jordan emphasized that does not include language. For example, in 18 U.S.C. 921 A3, it defines a firearm and then says such term does not include an antique firearm. It's a very similar language used there. Mr. Sleeper, that's true, and Lawrence, I think, provides you a good argument, and you're making it. That's great, but would you take Mr. Campbell's argument head on on this statutory section? He points to the Ninth Circuit's Vargas Castillo opinion, and in Vargas Castillo, the Ninth Circuit says, quote, the government had the burden of proving beyond a reasonable doubt that the substance found was marijuana. The definition of marijuana specifically states that only certain parts of the plant cannabis sativa L are included. Therefore, the government had to prove beyond a reasonable doubt that the substance in the packages consisted of the plant specifically included and not specifically excluded from the definition of marijuana. Now, this was before the Farm Bill Amendment. It's looking at that mature stock part of the statute, but it seems to track the argument that Mr. Campbell is making that this is an element of the offense. Am I reading that opinion wrong? And if I'm not reading it wrong, what's the government's answer to the Ninth Circuit? A few answers, Your Honor. First of all, that was entirely dicta in that case. The question before the court there was a multiplicity challenge, and it was based on the identity of the drug. So the question before the court there was, is it multiplicitous to have both a charge I believe it was cocaine and marijuana. So none of the briefing in that case addressed this issue of what was the element for possession of marijuana versus element for possession of cocaine. The question before the court there was, is the difference between marijuana and cocaine what matters for a multiplicity issue? So it was an unbriefed issue addressed in dicta in a non-binding opinion. There's not any reasoning in that opinion as to why that's the case either. There's no analysis of the effect of 21 USC 885A1. There's no analysis of McKelvey or anything like that. Frankly, Your Honor, I know my friend referred to it as a circuit split. I think relying on that case to say there's really a circuit split on this issue is a bit much. I don't think that there's anything binding or even any real analysis of that issue in this case. Well, we've got another case that also comes out of the Ninth Circuit, the Orduno Aguilera case. I mean, it's a different statute, but it's another controlled substance thing. That one too appears to be saying that only certain types of anabolic steroids would be considered controlled substances. And again, they say you didn't prove this one piece of it that promotes muscle growth piece. That's an element and not an exception. How do you address that? Yes, Your Honor. So that case squarely does address the issue, but as you said, it's in the context of a different statute. And when we're determining whether something is an exemption or not, the language of the statute matters. That statute that was being applied there was the former definition of steroids. And that was not phrased as it is here saying a broad category is steroid. And then there's a carve out saying such things are not a steroid. There it said, if it is a, I believe it was an ester derivative of a steroid that promotes, I think it was muscle growth, then it is a steroid. The equivalent language here would be if the definition of marijuana had an affirmative requirement saying that the THC percentage is greater than 0.3%. That's not how Congress phrased the statute here. Instead, they created a broad definition that would have otherwise encompassed him and provided a carve out for a substance that had less than 0.3%. So my response to that, Your Honor, would be that the such term does not include, that does not include language is important, and that's what flags something as an exemption. I would also note- Let's just for a moment assume that you had the burden here. If we thought you had the burden, the government had the burden, that this wasn't an exclusion. On what theory, if any, can the government still win? I think Judge Roth was getting at this with Mr. Campbell, but we're putting it to you too. Yes, Your Honor. So I think there's several items of evidence. First, I would point to the he said that he conducted three different tests on all the samples and that based on the data he obtained, he determined that it was marijuana. Yeah, but he acknowledged that he didn't do anything to test the THC content. And if that's a crucial piece of the definition, how can, I mean, then what he's doing is just, I mean, that's an Ipsy Dixit. He's just saying it's right. Apologies, Your Honor. Moment, my light's turned off. So for a few answers to that, Your Honor, is that more sounds like an objection to the admission of that evidence, which is not an issue that was brought on appeal. This is the sufficiency of the evidence argument. So the question is not should have he been allowed to opine that it was marijuana based on the other evidence he gave, but whether or not a reasonable jury could rely on a statement from a could rely on a statement from an experienced chemist saying it was marijuana and believe that he had applied the definition. And so I think sort of the framework for this is he says it's marijuana. A reasonable jury could. You've got a gap in there. He says it's marijuana. Then he's asked on cross-examination, did you do anything to test THC? And he says, no. Then could a reasonable jury knowing what the definition that the definition of marijuana doesn't include the same plant, but with the THC content of less than 0.3. Could a reasonable jury without any additional proof about THC say, oh, that's enough evidence. The government submits the answer to that is yes, your honor. And the reason was he was asked whether he did the test for THC percentage. He what he was not asked is whether any of the three tests that he had done that he described before making the determination it was marijuana would let him determine whether the substance was hemp or marijuana. So that's the difference between this case and the steroid case because there. This is kind of putting the rabbit in the hat is that I've asked you to assume for the sake of discussion that we thought this was an element, that the burden was on you. So if you assume that, isn't it incumbent on the government to come forward with some proof and not to say to the other side, well, you didn't disprove it. You know, our guy's smart. He's got a chemistry degree. He showed it's marijuana. Did you do any tests for THC content? No. Yeah. But you never asked him whether any of the other tests would somehow reveal it. But wait, that's who cares whether they ask that or not. If the burden's on you, didn't you have to put something in to affirmatively show what the THC content was and not just tell the jury, trust me, I'm a chemist. No, your honor. And so just to be clear on what my argument is, my argument is he said we did three tests. We determined and based on my results from those three tests, I was able to determine that this was marijuana. Then once you have that, we're not shifting the burden here. But the a reasonable jury could no longer rely on the evidence that the government had submitted that it was marijuana. So we're not shifting the burden. But the question is, has it been so undermined? And the point we're making is it has not been so undermined because unlike in the Ninth Circuit case that was cited by the defendant, where the chemist admitted that his sole basis for determining that it was a steroid was based on it being an ester derivative and not the other necessary fact, there is no such showing here because the questioning did not indicate that those other two tests, now we can see the color test, his testimony about the color test indicates that it didn't distinguish between the two, but that the G. C. M. S. Test and the visual inspection, the combination of that would not permit him to determine between the two. Okay, I understand your position. Judge, maybe anything from you, sir? Nothing further. Judge Roth. Nothing further. All right. Thanks, Mr. Sleeper. Mr. Campbell, your rebuttal. Thank you, your honors. I'd like to briefly address the inquiry that Judge Jordan had just raised about if the government did have the burden. And it's our position that if the government did have the burden, then this case essentially is on all fours with the Arduino-Aguilera case. In that case, the chemist testified on direct, just as Martinez testified here, that the substance at issue was in that case, steroids, in this case, marijuana. And the Ninth Circuit very carefully said, essentially ruled in that case, the government can't simply infer whatever it wants from questionable evidence. And that is what happened in this case. Well, Mr. Sleeper, speak directly to Mr. Sleeper's response to that. He says in Arduino-Aguilera, the testimony of the government's chemist itself showed affirmatively that nothing was done with respect. There was no test that was done that could have shown the promotes muscle growth piece of that argument. Here, that's not true. It may have been left implied, but it's at least implied. And that's a distinction with the difference. What's your answer to that? I don't think it's a distinction with a difference at all, because as the court was inquiring, again, if we're assuming that the government had a burden, the government can't satisfy that burden by using an absence of evidence or an absence of questions. So the court is left with no indication as to what test, if any, actually indicated in his mind what made this marijuana. For example, he did testify regarding the color test that all that determined was that some THC was present. So if the record is silent, we have no idea whether he used the presumptive test, said, well, some THC is present. I'm going to use the pre-2018 Farm Bill definition of marijuana. It's marijuana, because anything with THC is marijuana. The record is simply silent as to this. So this case does become on all fours with Orduno Aguilera at that point. The idea that... Is there circumstantial evidence that we would need to take account of, Mr. Campbell, is the behavior of Ms. Rivera. So, I mean, if it's not a controlled substance, this was just hemp. If she was smuggling rope, do you hide it in your suitcase and wrap it in dryer sheets and secrete it under different things and then pretend that a suitcase is not yours when it is yours and lie to the authorities and say, oh, I'm picking this up for a friend. It was on an earlier flight when the identifying loops on the luggage showed that it was checked in at the exact same time. I mean, do the many extraordinarily unbelievable statements of your client constitute no evidence from which jury could rightfully infer, yeah, this is marijuana because she was smuggling it and you don't smuggle rope. Understood, Your Honor. And again, this is an issue that was dealt with in the Orduno Aguilera case where I believe there were 400 vials, something along those lines, of a substance that the government alleged was anabolic steroids that were being smuggled. And what the Ninth Circuit explained is there can be many reasons why somebody might choose to smuggle something other than the fact that it's illegal, specifically the desire to avoid customs duties. That is one possible reason why someone might very well do that. And that's what the Ninth Circuit specifically held. There are cases that were cited in the briefing. I believe it was the Bryce case and the Dolan case that listed a number of factors that were present. That the courts could evaluate, most of which have no application here. There's no evidence, for example, that the substance was used and it produced the effects that a large amount of cash was involved in selling it and the like. I believe there's seven factors. Essentially, the evidence here only relates to the one factor of essentially how it was being trafficked or held or the like. And that's entirely consistent with the desire to either A, avoid customs duties, or B, avoid seizure. Because it's entirely possible that a person coming into the Virgin Islands with plant-like material that may be hemp, may have that seized at the customs board. They may not be allowed to bring it in. So the simple fact that there were inconsistent statements made in no way distinguishes this from Morduna-Aguilera that held to the contrary. All right. Thanks very much, Mr. Campbell. Judge Mady, Judge Roth, anything from you and my colleagues? No. Good enough. Well, we thank counsel for your argument. We've got the matter under advisement.